Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| SERGIO ALBINO LOZADA Y MARTA VEGA FIGUEROA POR SÍ Y EN REPRESENTACIÓN DE LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR ELLOS<br><br>Peticionarios<br><br>V.<br><br>NOEL LEÓN ROUMAIN<br><br>Recurrido | KLCE202400025 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2022CV03092<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2024.

El 8 de enero de 2024, compareció ante este Tribunal de Apelaciones, el señor Sergio Albino Lozada (en adelante señor Albino Lozada) y la señora Marta Vega Figueroa (en adelante, señora Vega Figueroa) por sí y en representación de la Sociedad Legal de Gananciales (en conjunto, parte peticionaria), por medio de *Certiorari*. Mediante este, nos solicita que revisemos la *Resolución* emitida el 27 de noviembre de 2023 y notificada el 7 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Ponce. En virtud del aludido dictamen, el foro *a quo* determinó que no procedía la resolución del contrato de transacción acogido mediante la *Sentencia* emitida el 22 de junio de 2023.

Por los fundamentos que adelante se esbozan, se expide el *certiorari* y se confirma la *Resolución* recurrida.

Número Identificador

SEN2024 _____

**I**

Los hechos que suscitaron la controversia de epígrafe son los que adelante se esbozan. El 8 de noviembre de 2022 la parte peticionaria presentó una *Demanda* sobre desahucio y cobro de dinero en contra del señor Noel León Roumain (en adelante, parte recurrida o señor León Roumain). De las alegaciones de la *Demanda* se desprende que, la parte peticionaria es dueña en común proindiviso de una propiedad ubicada en la Comunidad María Antonia 386, calle 11, en el Municipio de Guánica, Puerto Rico. De igual manera, surge que, el 16 de marzo de 2021, fue otorgado un contrato de opción de compra entre la parte peticionaria y el señor León Roumain, donde el objeto de este era la compra de la mencionada propiedad por la cantidad de $50,000.00. De acuerdo con la *Demanda*, el término para ejercer la opción vencía el 15 de mayo de 2022. La parte peticionaria alegó que, para el 15 de noviembre de 2021, el señor León Roumain había dejado de realizar los pagos mensuales acordados de $5,000.00, lo que constituía un incumplimiento con los términos pactados mediante el contrato de opción y que, por ello, este quedó vencido. Añadió, además, que conforme a la cláusula número ocho (8) del contrato de opción, la parte recurrida se obligó a devolver la posesión de la propiedad dentro de un término de diez (10) días contados a partir del surgimiento de la causa del incumplimiento. Así como, que de no entregar la propiedad dentro del término pactado, debía pagar penalidades a razón de quinientos dólares ($500.00) diarios, hasta la entrega de la propiedad. La parte peticionaria adujo que, se acordó mediante el contrato de opción que, si su resolución era causada por la parte recurrida, esta perdería cualquier mejora que hubiese realizado en la propiedad. A estos efectos, alegó que, el término para que la parte recurrida entregara la propiedad había vencido el 25 de noviembre de 2021, y que, habían transcurrido

trescientos cuarenta y siete (347) días sin que hubiese entregado la propiedad. Como consecuencia, adeudaba la cantidad de $173,500.00, respecto a la penalidad impuesta de quinientos dólares ($500.00) diarios. Cónsono con lo anterior, le solicitó al foro *a quo* que realizara una vista de desahucio, que le ordenara a la parte recurrida desalojar la propiedad y la condenara al pago de las sumas adeudadas, más gastos, costas, intereses y honorarios de abogado.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el 12 de enero de 2023, el foro de primera instancia emitió una *Sentencia Parcial*[1] por estipulación de las partes, donde desglosó los acuerdos a los que llegaron en la vista celebrada en igual fecha, respecto a la causa de acción de desahucio:

1. La parte demandada hará una entrega voluntaria de la propiedad a la parte demandante. Por razón de seguridad de la estructura en controversia, se coordinó para el 17 de enero de 2023 la inspección y sustitución de un equipo de seguridad (gatos) que tiene la estructura la cual sufrió daños por los terremotos.

2. La representación legal de la parte demandante se comunicará con el señor León para coordinar la hora y confirmar la fecha de entrega o seleccionar otra fecha de ser necesario.

El 20 de febrero de 2023, la parte recurrida presentó la *Contestación a la Demanda y Reconvención*[2]. Mientras que el 1ro de marzo de 2023, la parte peticionaria presentó la *Réplica a Reconvención*[3].

Luego de varios trámites procesales innecesarios pormenorizar, el 22 de junio de 2023, el Tribunal de Primera Instancia emitió *Sentencia*[4]. En virtud de esta, el foro primario acogió y aprobó un acuerdo de transacción al que llegaron las partes

---

[1] Véase entrada 14 del Sistema Unificado de Manejo y Administración de Casos (SUMAC), la Sentencia Parcial fue notificada el 20 de enero de 2023.
[2] Véase entrada 23 de SUMAC.
[3] Véase entrada 26 de SUMAC.
[4] Notificada el 28 de junio de 2023.

en la vista celebrada el 22 de junio de 2023. Dicho acuerdo consistía en lo siguiente:

1. La parte demandada estará adquiriendo la propiedad en controversia en el presente caso.

2. La parte demandada estará realizando dos pagos parciales: el primer pago por la cantidad de $10,000.00 lo realizará el 31 de julio de 2023 y el segundo pago por la cantidad de $25,000.00 lo realizará el 31 de agosto de 2023.

3. El demandado se compromete a sufragar todos los gastos notariales correspondientes a la otorgación de la Escritura de Compraventa y la inscripción en el Registro de la Propiedad.

4. Las partes se comprometen a otorgar la Escritura de Compraventa para el mes de septiembre de 2023. Las partes extrajudicialmente coordinarán el día específico en cual se hará el otorgamiento de la Escritura.

5. El pago del CRIM posterior al 1 de julio de 2023 será responsabilidad de la parte demandada.

6. Ante el incumplimiento del pago correspondiente por la parte demandada de cualquiera de los plazos pactados y de cualquier condición de la estipulación la parte demandante estará ejecutando la Sentencia.

Así las cosas, el 24 de agosto de 2023, la parte peticionaria presentó la *Moción en Solicitud de Ejecución de Sentencia*. Por medio de esta, sostuvo que, la parte recurrida había incumplido con los acuerdos recogidos en la *Sentencia* emitida el 22 de junio de 2023, en vista de que no realizó los pagos del CRIM a partir del 1 de julio de 2023, ni tampoco la totalidad del pago estipulado para el 31 de julio de 2023. A tales efectos, le solicitó al foro primario que emitiera la orden para la ejecución de sentencia por la cantidad de $174,846.76, más $5,000.00 en concepto de honorarios de abogado.

Subsiguientemente, la parte recurrida presentó la *Moción en Oposición de Ejecución de Sentencia y Solicitando Prórroga Perentoria para Realizar Pago Final*. Mediante la aludida moción, el señor León Roumain adujo que, el pago del CRIM no tenía una fecha límite conforme a la *Sentencia*, y que esta solo indicaba cuando debía

realizarse. Indicó que, el pago se iba a realizar próximamente. Añadió que, respecto al primer pago de $10,000.00, había realizado dos pagos de $5,000.00 por transferencias ACH para la fecha del 31 de julio de 2023, sin embargo, sostuvo que, no tenía control sobre la forma ni tiempo que tomaran las instituciones bancarias para tramitar pagos. Por otro lado, respecto al pago de $25,000.00 pactado a pagarse el 31 de agosto de 2023, solicitó una prórroga perentoria hasta el 8 de septiembre de 2023.

Posteriormente, la parte recurrida presentó la *Moción Informando Pago Total de la Sentencia por Acuerdo Transaccional de la Propiedad*. El señor León Roumain sostuvo que, el 8 de septiembre de 2023, había realizado el pago final por la cantidad de $25,000.00 a la parte peticionaria. Indicó que, la cantidad total pagada a la parte peticionaria fue de $55,000.00 por el valor del inmueble ubicado en el Municipio de Guánica, que, la deuda del CRIM sería pagada "en los próximos días".

El 16 de septiembre de 2023, la parte peticionaria presentó la *Moción en Oposición a "Moción en Oposición de Ejecución de Sentencia y Solicitando Prórroga Perentoria para Realizar Pago Final" y Sobre Otros Extremos*. En la aludida moción, la parte peticionaria argumentó que, no existía justificación alguna para que el señor León Roumain no cumpliera con los acuerdos recogidos en la *Sentencia* emitida el 22 de junio de 2023, y que, por ello, se oponía a la solicitud de prórroga presentada por este. Asimismo, manifestó que, el foro de primera instancia no contaba con discreción para prorrogar los términos transaccionales acordados por las partes. Finalmente, reiteró su solicitud de ejecución de sentencia por la cantidad reclamada en la *Demanda*.

El 25 de septiembre de 2023, la parte peticionaria presentó la *Moción en Cumplimiento de Orden*. Según surge de esta, la parte peticionaria arguyó que, no había recibido el pago final de

$25,000.00 el día 8 de septiembre de 2023, según informado por la parte recurrida. Acotó que, no fue hasta el día 20 de septiembre de 2023 que recibió un pago de $10,000.00 y no de $25,000.00. Reiteró, además que, procedía la ejecución de la sentencia.

El 27 de septiembre de 2023, la parte recurrida presentó la *Segunda Moción en Oposición de Ejecución de Sentencia[;] Moción Informativa y de Rectificación de Pago de Acuerdo Transaccional.* Adujo que, el primer pago de $10,000.00 había sido recibido por la parte peticionaria en el mes de agosto de 2023. Por otro lado, sostuvo que, el pago de $25,000.00 fue dividido en dos pagos, uno de $10,000.00 y otro de $15,000.00. Añadió que, los primeros $10,000.00 del segundo pago habían sido recibidos por la parte peticionaria el 20 de septiembre de 2023, mientras que los restantes $15,000.00 fueron depositados el 26 de septiembre de 2023.

El 2 de octubre de 2023, fue celebrada la *Vista Especial*, a la cual comparecieron todas las partes. El foro de primera instancia le ordenó a la parte peticionaria que presentara evidencia sobre los pagos dentro de quince (15) días. Asimismo, le ordenó a la parte recurrida replicar en el término de quince (15) días y presentar su posición al respecto.

Así las cosas, el 17 de octubre de 2023, la parte peticionaria presentó la *Moción en Cumplimiento de Orden y Sobre Otros Extremos.* Entre otras cosas, sostuvo que la parte recurrida no realizó el pago de $25,000.00 el día 31 de agosto de 2023 y que debido a ello, incumplió con el contrato de transacción. Acotó que, procedía la resolución del contrato de transacción, por el incumplimiento por parte del señor León Roumain con sus términos, y que se dictara sentencia por la cantidad de $174,846.76.

Por su parte, el 27 de octubre de 2023, el señor León Roumain presentó la *Moción en Cumplimiento de Orden.* Reiteró que, la parte

peticionaria había recibido la totalidad del pago acordado conforme a lo dispuesto en la *Sentencia* por estipulación.

Finalmente, el foro *a quo* emitió la *Resolución* cuya revisión nos atiene. En virtud de esta, el Tribunal de Primera Instancia determinó que, la parte recurrida "no dio cumplimiento con ninguno de los pagos acordados en la Sentencia en el término convenido, siendo parte del acuerdo de transacción la cantidad y la fecha de los pagos." Añadió que, la parte recurrida no tenía facultad para variar la cantidad y fecha en que se realizarían los pagos. Sin embargo, determinó que, conforme al contrato de transacción acogido mediante la *Sentencia*, las partes habían pactado que, de existir algún incumplimiento respecto a los pagos de cualquiera de los plazos acordados, la parte peticionaria podía ejecutar la sentencia, refiriéndose a los pagos pendientes. Pero que, no pactaron que de incumplir con alguno de los plazos acordados, la parte recurrida vendría obligada a satisfacer la suma de $174.846.76 reclamada en la *Demanda.* A tales efectos, resolvió que, debido al incumplimiento injustificado de la parte recurrida, esta debía satisfacer a la parte peticionaria el pago del interés legal prevaleciente a la fecha en que se dictó la *Sentencia,* por cada pago tardío realizado. El foro primario impuso el interés legal desde la fecha en que se debió realizar el pago, es decir, desde el 31 de julio de 2023 para el primer pago de $10,000.00 y el 31 de agosto de 2023 para el segundo pago de $25,000.00 y hasta la fecha en que finalmente se efectuó. Lo anterior, a razón de ocho por ciento (8%), según el interés legal prevaleciente al 22 de junio de 2023. Además, le impuso al señor León Roumain el pago de la suma de $5,000.00 en concepto de costas, gastos y honorarios de abogado. De igual forma, les ordenó a las partes a coordinar la firma de la escritura de compraventa, y le impuso a la parte recurrida la responsabilidad de asumir los

gastos notariales y de inscripción en el Registro de la Propiedad conforme a la *Sentencia.*

Inconforme con la determinación del foro *a quo*, la parte peticionaria acudió ante este foro revisor mediante *Certiorari*, el 8 de enero de 2024, y realizó los siguientes señalamientos de error:

1. Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la Moción en Solicitud de Ejecución de Sentencia[.]

2. Erró el Tribunal de Primera Instancia al no decretar la Resolución del Contrato de Transacción[.]

3. Erró el Tribunal de Primera Instancia al ordenar a los peticionarios a otorgar la Escritura de Compraventa sobre la propiedad en controversia[.]

Mediante *Resolución* emitida el 12 de enero de 2024, le concedimos al recurrido hasta el 22 de enero de 2024, para que se expresara en torno al recurso de *Certiorari* incoado. Le apercibimos que, transcurrido el término dispuesto, el recurso se entendería perfeccionado para su adjudicación final.

En cumplimiento con lo ordenado, el 22 de enero de 2024, la parte recurrida interpuso ante este foro apelativo *Oposición a Petición de Certiorari.*

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

**II**

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009). Ahora bien, tal "discreción no opera en lo abstracto. A esos

efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no

ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. Teoría General de los Contratos

Según es sabido, las obligaciones nacen de la ley, los contratos, los cuasicontratos, los actos ilícitos, de los actos u omisiones en las que interviene culpa o negligencia, y de cualquier otro acto idóneo para producirlas, conforme el ordenamiento jurídico. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Nuestro Código Civil define el contrato como aquel "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma provista por ley, para crear, regular modificar o extinguir obligaciones". Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). El contrato se perfecciona desde que las partes

manifiestan su consentimiento sobre el objeto y la causa, es decir, cuando median el objeto, consentimiento y causa. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022). No obstante, lo anterior no aplica en los casos en que sea requerido el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771.

En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, este faculta a las partes a contratar o no hacerlo con determinada persona, así como pactar los términos y condiciones que tengan por conveniente. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 187; *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994). Sin embargo, tal libertad no es infinita, puesto que, las partes podrán acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Burgos López et al. v. Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez se perfecciona el contrato, lo acordado en este tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 9754. Finalmente, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

### C. Contrato de Transacción

En nuestra jurisdicción, la transacción es un contrato mediante el cual a través de concesiones recíprocas, las partes dan

fin a un litigio o a su incertidumbre sobre una relación jurídica. Art. 1497 del Código Civil de Puerto Rico, 31 LPRA sec. 10641. Deberán cumplirse dos (2) elementos para que un acuerdo pueda considerarse un contrato de transacción, a saber: la existencia de una controversia entre dos o más personas y la necesidad de concesiones recíprocas entre ellas. *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 DPR 860, 870 (1995). Este tipo de contrato se interpreta restrictivamente y produce los efectos de la cosa juzgada. Arts. 1499 y 1500 del Código Civil de Puerto Rico, 31 LPRA secs. 10643 y 10644. Esto significa que, las partes tienen que considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre estos. *Citibank v. Dependable Ins. Co. Inc.*, 121 DPR 503, 516 (1988). De acuerdo a nuestro ordenamiento jurídico, la transacción deberá constar por escrito firmado por las partes o en una resolución o una sentencia dictada por el tribunal, no cumplir con esto la convierte en nula. Art. 1503 del Código Civil de Puerto Rico, 31 LPRA sec. 10647.

Por otra parte, puede colegirse que existen dos clases de contratos de transacción: judicial y extrajudicial. *Neca Mortg. Corp. v. A&W Dev. S.E.*, supra, pág. 870. En ese sentido, se configura un contrato de transacción extrajudicial cuando antes de comenzar un pleito las partes eliminan la controversia mediante un acuerdo. *Íd.* También puede ocurrir que, aun estando pendiente un litigio, las partes acuerden una transacción sin la intervención del tribunal. En este último caso, bastará un mero aviso de desistimiento. *Íd.* Por el contrario, si la controversia da lugar a un pleito y, luego de este haber iniciado, las partes acuerdan eliminar la disputa y solicitan incorporar el acuerdo al proceso judicial en curso, estaremos ante un contrato de transacción judicial que tiene efecto de culminar con el pleito. *Íd.*, págs. 870-871. *Negrón Vélez v. ACT*, 196 DPR 489, 504-505 (2016).

De igual forma, es preciso destacar que el contrato de transacción tiene los mismos requisitos que se establecen en el Código Civil de Puerto Rico para la validez de los contratos. Esto es, para que exista este tipo de contrato deben concurrir los elementos siguientes: el consentimiento de las partes sobre el objeto y la causa[5]. Estos requisitos se refieren a que el acuerdo sea consensual; que exista como objeto una polémica judicial o extrajudicial entre las partes que dé lugar a la transacción, y su causa que consiste en eliminar la controversia mediante las concesiones recíprocas. *Neca Mortg. Corp. v. A&W Dev. SE*, supra, pág. 871; *Negrón Vélez v. ACT*, supra, pág. 505.

Por otro lado, respecto a la invalidez de una transacción, el Código Civil dispone que, en adición a las causas que invalidan todo acto jurídico, la transacción es inválida cuando:

**(a)** La situación que la genera no se corresponde con los hechos reales y el litigio o la incertidumbre no hubieran aparecido de haberse conocido la situación real;

**(b)** incluye títulos total o parcialmente inexistentes;

**(c)** incluye títulos sobre los cuales se ignora que existe otro mejor;

**(d)** incluye aspectos sobre los cuales se ignora que ya están resueltos mediante sentencia firme; o

**(e)** la efectividad de una prestación es insegura.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe procedemos a resolver.

### III

En esencia, la parte peticionaria en el primer señalamiento de error, sostiene que, el foro de primera instancia incidió al declarar No Ha Lugar la *Moción en Solicitud de Ejecución de Sentencia.*

---

[5] Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 186.

Como segundo señalamiento de error, la parte peticionaria arguye que, el Tribunal de Primera Instancia erró al no decretar la resolución del contrato de transacción.

En su tercer señalamiento de error, la parte peticionaria sostiene que el foro *a quo* incidió al ordenarle a otorgar la Escritura de Compraventa sobre la propiedad en controversia.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error antes esbozados de forma conjunta. Asimismo, adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, el 22 de junio de 2023, la primera instancia judicial emitió *Sentencia*, donde acogió y aprobó un acuerdo de transacción al que llegaron las partes en la vista celebrada en esa misma fecha. Dicho acuerdo consistió en lo siguiente:

1. La parte demandada estará adquiriendo la propiedad en controversia en el presente caso.

2. La parte demandada estará realizando dos pagos parciales: el primer pago por la cantidad de $10,000.00 lo realizará el 31 de julio de 2023 y el segundo pago por la cantidad de $25,000.00 lo realizará el 31 de agosto de 2023.

3. El demandado se compromete a sufragar todos los gastos notariales correspondientes a la otorgación de la Escritura de Compraventa y la inscripción en el Registro de la Propiedad.

4. Las partes se comprometen a otorgar la Escritura de Compraventa para el mes de septiembre de 2023. Las partes extrajudicialmente coordinarán el día específico en cual se hará el otorgamiento de la Escritura.

5. El pago del CRIM posterior al 1 de julio de 2023 será responsabilidad de la parte demandada.

6. Ante el incumplimiento del pago correspondiente por la parte demandada de cualquiera de los plazos pactados y de cualquier condición de la estipulación la parte demandante estará ejecutando la Sentencia.

Posteriormente, la parte peticionaria presentó la *Moción en Solicitud de Ejecución de Sentencia*. Por medio de esta, sostuvo que,

la parte recurrida había incumplido con los acuerdos recogidos en la *Sentencia* emitida el 22 de junio de 2023, en vista de que no realizó los pagos del CRIM a partir del 1 de julio de 2023, ni tampoco la totalidad del pago estipulado para el 31 de julio de 2023. A estos efectos, le solicitó al foro primario que emitiera la orden para la ejecución de sentencia por la cantidad de $174,846.76, más $5,000.00 en concepto de honorarios de abogado.

En respuesta, el señor León Roumain presentó la *Moción en Oposición de Ejecución de Sentencia y Solicitando Prórroga Perentoria para Realizar el Pago Final*. Mediante esta, sostuvo que, en cuanto al primer pago de $10,000.00, había realizado dos (2) pagos de $5,000.00 por transferencias ACH para la fecha del 31 de julio de 2023, sin embargo, expresó que no tenía control sobre la forma ni tiempo que tomaran las instituciones bancarias para tramitar dichos pagos. Por otro lado, respecto al pago de $25,000.00 pactado a pagarse el 31 de agosto de 2023, solicitó una prórroga perentoria hasta el 8 de septiembre de 2023.

Subsiguientemente, la parte recurrida presentó la *Moción Informando Pago Total de la Sentencia por Acuerdo Transaccional de la Propiedad*, por medio de la cual acotó haber realizado el pago final por la cantidad de $25,000.00 a la parte peticionaria el 8 de septiembre de 2023. Indicó, además, que, la cantidad total pagada a la parte peticionaria fue de $55,000.00 por el valor del inmueble ubicado en el municipio de Guánica.

Más adelante, la parte peticionaria presentó la *Moción en Oposición a "Moción en Oposición de Ejecución de Sentencia y Solicitando Prórroga Perentoria para Realizar Pago Final" y Sobre Otros Extremos*, donde entre otras cosas, reiteró su solicitud de ejecución de sentencia por la cantidad reclamada en la *Demanda*. De igual manera, la parte peticionaria presentó la *Moción en*

*Cumplimiento de Orden,* en la cual acotó que no había recibido el pago final de $25,000.00 el día 8 de septiembre de 2023.

Mientras que, por su parte, el señor León Roumain presentó la *Segunda Moción en Oposición de Ejecución de Sentencia[;] Moción Informativa y de Rectificación de Pago de Acuerdo Transaccional.*

Luego de varias incidencias procesales innecesarias pormenorizar, la parte peticionaria presentó la *Moción en Cumplimiento de Orden y Sobre Otros Extremos.* Conforme surge de esta, la parte peticionaria adujo que el señor León Roumain no había realizado el pago de $25,000.00 el día 31 de agosto de 2023, y que, consecuentemente, había incumplido con el contrato de transacción, por lo que procedía la resolución de este.

Por su parte, el 27 de octubre de 2023, el señor León Roumain presentó la *Moción en Cumplimiento de Orden.* Reiteró que, la parte peticionaria había recibido la totalidad del pago acordado conforme a lo dispuesto en la *Sentencia* por estipulación.

Finalmente, el Tribunal de Primera Instancia emitió la *Resolución* cuya revisión nos ocupa. En virtud de esta, determinó lo siguiente:

> [E]ste Tribunal concluye que la parte demandada no dio cumplimiento con ninguno de los pagos acordados en la Sentencia en el término convenido, siendo parte del acuerdo de transacción la cantidad y la fecha de los pagos. La parte demandada no tiene facultad de variar la cantidad y la fecha en que se realizarán los pagos. [...]
>
> Posteriormente, las partes acordaron una transacción final. En consecuencia, al haberse dictado una Sentencia por Estipulación, las partes perfeccionaron un contrato de transacción. Según dicha Sentencia por Estipulación, lo pactado por las partes fue que, de incumplir la parte demandada con el pago de cualquiera de los plazos acordados la parte demandante podrá ejecutar la sentencia; ello a todas luces **se refiere a los pagos pendientes**. Las partes no pactaron que, de haber un incumplimiento con alguno de los plazos acordados, la parte demandada, vendría obligada a satisfacer la suma de $174,846.76, reclamada en la Demanda.

No obstante, habiéndose dictado la Sentencia por Estipulación el 22 de junio de 2023, al amparo de la Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V. R. 44.3 *supra*, ante el incumplimiento injustificado de la parte demandada, este Tribunal concluye que la parte demandada deberá satisfacer a la parte demandante el pago del **interés legal prevaleciente** a la fecha en que se dictó la Sentencia, por cada pago tardío realizado. El interés legal se impone desde la fecha en que se debió realizar el pago, entiéndase 31 de julio de 2023 para el primer pago de $10,000.00 y el 31 de agosto de 2023 para el segundo pago de $25,000.00; y hasta la fecha en que finalmente se efectuó, ello a razón de 8.0% según el interés legal prevaleciente al 22 de junio de 2023, fecha en que se dictó la Sentencia por Estipulación. Además, se impone a la parte demandada el pago de la suma de $5,000.00 para costas, gastos y honorarios de abogados, según pactados entre las partes en la Cláusula 8 del Contrato de Opción de Compraventa suscrito el 16 de marzo de 2021.

Una vez perfeccionado el pago de los intereses y de la partida de gastos, costas y los honorarios de abogado pactados, las partes deberán coordinar la firma de la Escritura de Compraventa, siendo la parte demandada responsable de los gastos notariales y de inscripción en el Registro de la Propiedad conforme a la Sentencia de Estipulación. (Citas omitidas).

Conforme el derecho expuesto, la transacción es un contrato mediante el cual, a través de concesiones recíprocas, las partes dan fin a un litigio o a su incertidumbre sobre una relación jurídica.[6] Para que un acuerdo pueda considerarse un contrato de transacción deberán cumplirse dos elementos esenciales, a saber: la existencia de una controversia entre dos o más personas y la necesidad de concesiones recíprocas entre ellas.[7] Este tipo de contrato produce los efectos de la cosa juzgada.[8] Es decir, las partes deberán considerar los puntos discutidos como definitivamente resueltos, y no pueden volver nuevamente sobre estos.[9]

En el caso de epígrafe, el foro de primera instancia acogió el acuerdo mediante la *Sentencia* emitida el 22 de junio de 2023[10], donde se estableció un plazo para que la parte recurrida cumpliera

---

[6] Art. 1497 del Código Civil de Puerto Rico, 31 LPRA sec. 10641.
[7] *Neca Mortg. Corp. v. A&W Dev. S.E.*, supra, pág. 870.
[8] Art. 1500 del Código Civil de Puerto Rico, 31 LPRA sec. 10644.
[9] *Citibank v. Dependable Ins. Co. Inc.*, supra, pág. 516.
[10] Notificada el 28 de junio de 2023.

con el pago adeudado. Si bien es cierto que, la parte peticionaria no dio cumplimiento con ninguno de los pagos acordados en la *Sentencia* en el término convenido, como bien resolvió el foro *a quo*, nada se dispuso acerca de que de haber un incumplimiento con los plazos acordados, la parte recurrida se vería obligada a satisfacer la suma de $174,846.76 reclamada en la *Demanda*. Lo único que se dispuso respecto a ello fue que, en el caso de incumplimiento con tales plazos acordados, la parte peticionaria podía ejecutar la sentencia, es decir, reclamar los pagos pendientes.

De igual manera, es necesario destacar que, el objeto de la transacción ya es cosa juzgada. Es decir, ya habiéndose acogido el acuerdo y resuelto la controversia principal de la *Demanda*, la parte peticionaria se encontraba imposibilitada de volver a reclamar la partida solicitada en la *Demanda*.

Por otro lado, nuestro Máximo Foro ha dispuesto que, cuando se trata de una transacción judicial y una de las partes no cumple con lo estipulado, como regla general, no procede la resolución. En estas situaciones, se puede solicitar inmediatamente que lo convenido se lleve a efecto, dado a que tiene para las partes la misma fuerza que la sentencia firme, y utilizar el procedimiento de apremio. *Neca Mort. Corp. v. A&W Dev. SE,* supra, pág. 875.

Por tanto, ante el incumplimiento injustificado de la parte recurrida sobre los pagos dentro de los plazos acordados, como primera opción, procedía la solicitud del cumplimiento de lo convenido y así, la imposición del pago del interés legal prevaleciente a la fecha en que se dictó la *Sentencia* y no la resolución del contrato, después de todo, la parte recurrida cumplió con el pago total de lo acordado.

Finalmente, conforme a los acuerdos en el contrato de transacción entre las partes, procede el otorgamiento de la Escritura de Compraventa sobre la propiedad en controversia una vez se

satisfaga el pago del interés legal prevaleciente, dado a que, la parte recurrida pagó en su totalidad lo acordado.

**IV**

Por los fundamentos que anteceden, se expide el *certiorari* y se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones